Trezevawt, J.,
thought that the advantage claimed by the objection to the want of an endorsement, was not liberally claimed, and, therefore, he felt a strong desire to get over it; but, that the language of the act, and the policy of it, seemed to him to forbid the construction which had been given to it by his brothers. He was of opinion that the writ ought to have been indorsed pursuant to the act, to have the effect of a process in ejectment. Suppose the legislature had prescribed a particular form of process, could the courts say that another form might be used for the same purpose ? The act requiring an endorsement, has prescribed that as a .particular part of the process, and the courts are bound to see that it is used as a necessary part. The endorsement on the declaration did not sup. ply the omission of the endorsement on the writ. But as the court,, he said, were divided, the plaintiff would not be deprived of the *15 benefit of the verdict in her favor: and, although he thought judg. ment could not be entered up on the verdict for the land* yet, that under the verdict, the plaintiff might defend her title, and establish it in opposition to the defendant, by giving it in evidence in an action oí ejectment to recover the possession, because, he said, the defendant, by pleading lib. ten. had converted the action into areal action, and brought the title in issue.
Bkevard, J.
The first objection to the verdict in this case is, that at the trial the plaintiff did not prove that she was in possession of the land on which the trespass is alleged to have been committed. If the proceedings in the cast can be considered as proper, instead of the proceedings used in the old action of ejectment, and suffix cient not only to draw in question the titles of the parties, and try the right between them, but to authorize the plaintiff, if she should prevail in the action, to recover the land, as well as damages for the trespass, then the objection has no force ; because it is not necessary that the plaintiff in ejectment, (although in legal contemplation he must be considered a0 having been actually ousted,) should prove that he was in possesion when the trespass complained of was committed. But, if tlie proceedings cau only be considered as proper to try the tres* pass or wrongful intrusion, and to recover damages; if the action can* not be regarded in the light of a real action, but as a personal action merely; then, it was undoubtedly incumbent on the plaintiff to have proved possession in herself, and the objection ought to be sustained.
In room of the old method of proceeding in ejectment, to try titles, and recover possession of land, the form of the proceedings in an action of trespass, quare clausum fregit, has been substituted ; but it is expressly declared, by an act of the legislature, that the plaintiff in an action of trespass to try titles, shall endorse on his ■writ a notice to signify that the action is brought, as well for the' purpose of trying the title, as for damages, in order to distinguish1 the action from the common action of trespass for breaking the close. In the present case no such endorsement was made ; and,, therefore, I think the action cannot be regarded as one intended to recover the land, and try the titles of the parties; although in the common action of trespass, quare clausum fregit, the title may incidentally come in question. In order to give to the action for break, ing the close, the force and effect of the old action of ejectment, it appears to me essentially necessary.that the writ should be endorsed according to the direction of the act; and that no other notice, verbal or written, can or ought to be held sufficient or equivalent. This endorsement must be considered as an essential part of the *16 form of the action, and the only distinguishing feature by which it cun be known from the common action for breaking the close. In ac't°n for intruding or committing trespass on land, the land is considered as being in the possession of the plaintiff, who cannot supposed to demand the land of the defendant, but only a com. pensution in damages for the unlawful entry and trespass ; but in the action to try titles, the land itself, the locus in quo. is demanded ; and the plaintiff, if he can substantiate his title, ought to recover the land, as well as damages, and have execution to put him in possession. Without this endorsement on the Writ, no judgment can’ be legally entered up for the land, nor can a writ of habere facias possessionem issue. The verdict cannot authorise any such judg. mem or execution ; it can only entitle the plaintiff to the damages, if any be found, and costs. If the plaintiff should hereafter bring two separate actions of trespass, properly formed, to try the titles to this same land, could the defendant plead, or give in evidence, the present action to bar the plaintiff, under the act which prohibits the bringing of more than two actions of ejectment for the same land 1 1 conceive not. Nor can I imagine any means by which the plaintiff can advantage heiself of the verdict, and recover in the present case, in support of her title, or claim to the land, in question f it itf beyond my reach to see upon what principle of law the verdict in this case can be used in her behalf in an action to try titles,as con-elusive evidence of her right to the land ; when even in ejectment,-the verdict in the first action could not be given in evidence, or pleaded in bar to the second. At common law the plaintiff might' bring ejectment, loties quoties, without prejudice to Ins right, and by our law, two actions of ejectment may be brought for the same laud.
As the verdict for the land cannot, in my judgment, be supported by the form of the action, judgment ought to be arrested, or a ve°-ñire de novo awarded.-
Another objection- taken in the case is, that the plaintiff did not prove any title in Hails, under whom she claims.- The objection to M’Kelvey’s competency, as a witness, was clearly removed by the? release from Hails, to whom he conveyed the land in October, 1805. But this witness was not clear he ever conveyed to Hails prior to 1805, though be inclined to think he had. No witness was produced to prove the execution of any such deed of conveyance, nor was there any evidence to be safely relied on, of the existence of any such deed. To supply the want of evidence to support the feeble presumption arising from M’Kelvey’s testimony, the written agree, ment between Hails and M’Kelvey was admitted, containing *17 M’Kelvey’s promise to convey. It seems to me this evidence was not legally admissible; but if it was, I cannot perceive that it aids the presumption that the land was conveyed; on the contrary, it does appear to me, that this agreement, being in the possession of Hails, or those claiming under him, affords very strong presumptive' evidence to induce a belief that no conveyance, in pursuance of the agreement, was ever executed prior to 1805; for if such a conveyance was executed, how did it happen that the agreement was not given up ? And how has it happened that the agreement remains, if the conveyance was executed, and was destroyed in the manner which has been conjectured. If the agreement was not given up, (and it is certain that it was not,) is it not reasonable to suppose that it was placed wherever the conveyance was? How is it to be accounted for that they did not share the same fate?
The proceedings in equity, I think, could not be properly admitted in evidence, inasmuch as all the parties interested were not before the court of equity; and, therefore, the decree was invalid by the plaintiff’s own shewing. I cannot discover that there was any evidence sufficient to authorize the jury to presume, (hat Hails ever had a legal title to the land in question prior to the year 1805 ; and if he had not, the deed from him to Lehre and wife in 1798, con-vcyed no right.
Another objection to the verdict is, that admitting Hails to have had a good legal title in 1798, when he conveyed to Lehre and wife, yet, as the verdict is in favor of Mrs. Lehre alone for the whole land, it ought to be set aside, inasmuch as the evidence was insufficient to maintain her title to more than an undivided moiety of the land.
This objection depends on the admissibility and force of the evidence which was given of the proceedings in equity. I have already staled my opinion on that point. It does not appear that the devisee, or heir of Dr. Lehre, was a party or privy to those proceedings in equity, and, therefore, as to him, they were ex parte. The plaintiff in ejectment must recover by the strength of his own title. The title to more than an undivided moiety is unsupported by sufficient evidence, even if the title to the other moiety should be allowed. Then, according to a late decision in this court, in the case of Perry v Middleton, the objection ought to prevail; because, at Dr. Lehre’s death, the jointenancy was severed and turned into a tenancy in common ; and the verdict ought to have been according to her title, namely, for an undivided half part of the land, as tenant in common.
Note. A freehold may be given in evidence under the general issue, 3 Johns; Where the title is pleaded, the issue is. on the mere title. Ib. Argument. (Will’s Rep. 221. Trespass is a possessory action founded on the possession merely, and the right need not be decided.)
Ejectment.was never laid'with a continuando; consequently, the plaintiff in such action, could never recover damages-for the mesne profits-. 3 Wils. 120.
When the method of recovering the term by ejectment was introduced,- it became' usual for a man who had a right of entry into lands, to seal'leases of ejeetment thereon, and then the person who next entered on the freehold was art ejector. The convenience which arose from this method* was, that they couldr-try the title toties quoties; whereas, if the plaintiff- was barred in an assize, he was put to his writ of right. Runn. 4.
When the plaintiff had made his lease upon the land, any third person who came thereon; animo possiSendi, was in strictness of "law, an ejector. Runn. 8.
A new trial'may be'*granted in ejectment, as well as brother actions, Where the party applying would suffer by a change of possession. This is an indulgence.which was not formerly allowed, because the injured party might bring anew ejectment. See Kunn. 117. 1 Bur. 395. 4 Bur. 2a25- 3 Bur.12‘25.
The judgment in ejectment is a recovery of the possession, without preju-dicé to the right; as it may afterwards appear, even between the parties. He-who enters under it in truth and substance, can only be possessed according te rights prout lex postulat. I Bur. 114.
By A. A. 1744, P. L. 190, if the plaintiff in any action of ejectment, in case verdict and judgment shall pass against him, or that he suffer a nonsuit, or discontinue, or any otHerways let fall his said action, such verdict, judgment, non-suit; or discontinuance, shall not be conclusive and definitive on the 'part of sueli plaintiff} but at-any time within two' years, the said plaintiff, or any other person or persons claiming by, from, or under him, shall have right,.and be empowered to commence his action for the recovery of the said lands and tenements de novo. And in case verdict and judgment shall again pass against such plaintiff" or that he suffer a nonsuit, &c. a second time, then such second verdict or judgment, &c. shall be finally conclusive, &c. And the right and title of the defendant shall be established against such plaintiff: Excepting persons beyond seas, &c.'
^Pon the whole, my opinion is, that the verdict ought to be set’aside, and venire facias de novo awarded.